IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02458-MSK-KLM

JIMMIE LOUISE GRAY, individually and as Personal Representative of the Estate of
CHARLES GRAY, deceased;
TERESA LEEPER;
DAVID GRAY; and
TIM GRAY,

       Plaintiffs,

v.

UNIVERSITY OF COLORADO HOSPITAL AUTHORITY, a body corporate and political
subdivision of the State of Colorado;
UNIVERSITY OF COLORADO HOSPITAL;
MARK SPITZ, in his individual and official capacities;
ARCHANA SHRESTHA, M.D., in her individual and official capacities;
CHRISTY BARBEE-YOUNG, M.D., in her individual and official capacities;
MOLLIE STARTZER, R.N., in her individual and official capacities;
BEVERLY SOLAS-FAJARDO, C.N.A., in her individual and official capacities;
JASON BOOE, in his individual and official capacities;
JACQUELINE FUNK, in her individual and official capacities;

       Defendants.
_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants[1] Motion to Dismiss

Individual Capacity Claims **(# 16)**, the Plaintiffs' response **(# 34)**, and the Defendants' reply

**(#45)**; the Defendants' Motion to Dismiss Federal Claims **(# 17)**, the Plaintiffs' response **(# 32)**,

---

[1]Initially, only Defendants Spitz, Shrestha, and Barbee-Young moved for relief.
Thereafter, the remaining Defendants joined in the motions.

1

and the Defendants' reply **(# 46)**; and the Defendants' Motion to Dismiss State Law Claim **(# 18)**, and the Plaintiffs' response **(# 33)**.

## FACTS

Although the Complaint **(# 1)** is lengthy, the facts relevant here are simple. On October 15, 2007, Charles Gray was admitted to the University of Colorado Hospital for treatment. Among other things, physicians at the hospital withdrew Mr. Gray from anti-seizure medication in preparation for surgery. Mr. Gray was supposed to be monitored at all times while deprived of his anti-seizure medication, but on October 18, 2007, due to oversight by hospital staff, Mr. Gray went unmonitored for approximately one hour. During that time, Mr. Gray suffered a fatal seizure.

The Plaintiffs, Mr. Gray's representatives and family, assert several claims: (i) deprivation of Mr. Gray's Due Process rights under the 14th Amendment to the U.S. Constitution, in that the defendants "denied necessary medical care and treatment," in violation of 42 U.S.C. §1983; (ii) a claim derivative of the previous claim, asserting that certain supervisors are liable for the Due Process violation for allowing the constitutional deprivation to occur as a result of a failure to supervise, in violation of 42 U.S.C. § 1983; (iii) deprivation of Mr. Gray's Substantive Due Process rights under the 14th Amendment, in that the Defendants created the danger faced by Mr. Gray, in violation of 42 U.S.C. § 1983; (iv) deprivation of the remaining Plaintiffs' right to "familial association" under the 1st Amendment, in violation of 42 U.S.C. § 1983; and (v) several additional claims sounding in negligence, lack of informed consent, etc., all asserted under state law.

The Defendants move to dismiss the § 1983 pursuant to Fed. R. Civ. P. 12(b)(6), and

suggest that, were the Court to dismiss all claims supporting federal jurisdiction, the Court should decline to exercise supplemental jurisdiction over the remaining state-law claims.

## ANALYSIS

**A. Standard of review**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its consideration to the four corners of the Amended Complaint,[2] any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[2]Both sides have included extensive factual recitations in their motion briefing. Such factual discussion might be appropriate with regard to those claims for which the Defendants seek summary judgment, but for those claims in which the Defendants seek dismissal under Rule 12(b)(6), the Court has ignored the factual supplements in the motion papers and looks only to the facts as asserted in the Amended Complaint.

3

544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis. A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. The cases make clear that it is <u>facts</u>, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id.* at 1949-50. Moreover, the facts pled must demonstrate a "plausible" claim, that is, one in which the pleader has shown more than just an abstract "possibility" that the defendant has engaged in actionable misconduct.³ *Id.* One way in which the Court might conduct its analysis is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

---

³The Supreme Court took pains to ensure that the word "plausible" is understood to mean that the plaintiff has a demonstrable and concrete belief that a wrong has been committed and the defendant is the person responsible, as opposed to a set of facts in which a wrong might possibly and hypothetically be ascertained, and the defendant might, hypothetically, be a person who might have been responsible for that wrong. For example, in *Twombly*, the Court observed that the plaintiff in an antitrust case had sufficiently pled as a fact that two defendants had engaged in "parallel behavior." However, it found that while parallel conduct <u>might</u> be consistent with the required element of an agreement between the two defendants, "it was not only compatible with, but indeed was more likely explained by, lawful unchoreographed free-market behavior." 550 U.S. at 567. Thus, "the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement." *Id.* at 570.

Cases such as *Twombly* and *Iqbal* make clear that the "plausibility" requirement is not an invitation to this Court to speculate as to whether well-pleaded facts alleged by the pleader are likely to be proven true or not. In this sense, "plausible" is not the synonym of "believable."

4

### B. Constitutional claims

The Defendants contend that, at bottom, the Plaintiffs' § 1983 claims sound in medical malpractice, and argue that the Constitution does not protect persons against such malpractice, even when committed by state actors. *Citing Johnson ex. rel Johnson v. Thompson*, 971 F.2d 1487 (10th Cir. 1992) and *Villalpando v. Denver Health and Hosp. Auth.*, 65 Fed.Appx. 683 (10th Cir. 2003) (unpublished). In general, these cases stand for the proposition that, where non-prisoners voluntarily seek medical care from state actors, negligent and even willfully indifferent treatment does not amount to a violation of the U.S. Constitution. *Villalpando*, 65 Fed.Appx. at 687; *see also Chrstiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) ("the Due Process Clause protects against <u>deliberately</u> wrongful government decisions rather than merely negligent government conduct") (emphasis in original).

The Plaintiffs do not appear to dispute that cases such as *Villalpando* are dispositive of their simple Constitutional claims, but they contend that these cases do not address the Substantive Due Process claim premised on "danger creation." In other words, the Plaintiffs contend that, because the Defendants created or enhanced Mr. Gray's vulnerability to harm by taking him off the anti-seizure medication and then failing to monitor him for seizures, the Defendants "created the danger" that later harmed him, thus giving rise to Constitutional liability. *Citing Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998).

The Defendants argue in reply that the "danger creation" theory applies only when the state actor's acts increase the victim's susceptibility to harm caused by third parties. The Defendants' support for this proposition is a single case, *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006). In *Moore*, the plaintiff police officer was injured when he was struck in the eye

5

by a bullet during a life-fire training exercise. He commenced suit against the police department and police chief under § 1983, asserting that the chief had created a danger by requiring the plaintiff to wear inadequate protective equipment while participating in the exercise. The trial court dismissed the officer's complaint on qualified immunity grounds, finding that the officer had failed to adequately allege a constitutional violation, and the 10th Circuit affirmed. The court explained that the "danger creation" theory is "an exception to the rule that state actors are not liable for the violent acts of third parties." *Id.* at 1042, *citing Christiansen*, 332 F.3d at 1279-80. It stated that the doctrine "makes a state official liable for the private violence of third parties if that official created the danger that caused the harm and the official's conduct was conscience shocking." *Id.* It stated that "[t]his is a narrow exception, which applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence." *Id.* (citation omitted), *citing Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). It concluded by noting that the doctrine "does not apply when the injury occurs due to the action of another state actor." *Id.*

This Court has some doubt that *Moore* is intended to express a rule that the "danger creation" doctrine is limited to circumstances where violence by a third party is the cause of the victim's injury. The case that *Moore* relies upon, *Currier*, indisputably involved "private violence," as the claim there was asserted against a social workers accused of creating a danger when he placed the child victim in the custody of a parent who later abused the child., but *Currier* does not stand for the proposition that the <u>absence</u> of private violence is fatal to a "danger creation" claim, because the Court in *Currier* never considered the issue.

Moreover, interpretation of *Moore* as urged by the Defendants, would be inconsistent

6

with jurisprudence inside and outside the 10th Circuit. In *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253 (10th Cir. 1998), police officers were accused of creating a danger by delivering a troubled student, suspended from school, to his home without first determining whether the student's parents were home. The student, left alone in the home, committed suicide. The 10th Circuit affirmed the trial court's refusal to grant summary judgment to the police officers on the student's family's § 1983 claim sounding in "danger creation," finding that the police knew of the student's troubled emotional state and the possibility that the student would act violently if left unsupervised. *Id.* at 1262-64. Clearly, in *Armijo*, the victim's suicide was not the result of "private violence of <u>third</u> parties," yet it still gave rise to a cognizable claim.

Even more illustrative are cases such as *Kneipp v. Tedder,* 95 F.3d 1199, 1208-09 (3d Cir. 1996). There, police apprehended an intoxicated couple. The police released the husband to return home alone, but kept the wife in custody for an additional period of time. Later, rather than taking the severely-intoxicated wife to her home, the police station, or a hospital, the police simply abandoned her by the side of the road. She was later found in a ditch nearby, having suffered injuries from exposure to cold weather, among other things. The appeals court reversed the trial court's grant of summary judgment to the police officers on the wife's § 1983 claim sounding in "danger creation, finding that the wife had sufficiently demonstrated a cognizable claim. As in *Armijo*, the wife was not the victim of "private violence of third parties"; rather, she was simply the victim of natural forces (prolonged exposure to cold weather) or, at best, her own negligence. Cases such as *Kneipp* and *Armijo* thus indicate that *Moore* should not be read literally to restrict the application of the "danger creation" theory to circumstances where the

victim is injured by "violence" caused by "third parties."

Ultimately, it may not be necessary for this Court to attempt to ascertain precisely what significance *Moore* has. Even under the "danger creation" theory, the Plaintiffs must allege facts showing that the Defendants' behavior – the behavior that created the risk – was "conscience shocking." *Moore*, 438 F.3d at 1042, *citing Ulhrig v. Harder*, 64 F.3d 567, 573. In discussing this standard in the Due Process context, the Supreme Court has explained that "conscience shocking" conduct must be more than that which is ordinarily actionable in tort. *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

Calibrating the judicial conscience in these types of cases requires consideration of three principles: (i) the need for restraint in defining the scope of a violation of Constitutional-level significance; (ii) the concern that § 1983 not replace state tort law; and (iii) the need for deference to local policymaking bodies in making decisions impacting public safety. *Id.* at 125. The type of conduct that will rise to the level of "conscience shocking" "requires a high degree of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist . . is not necessarily conscience shocking." *Ulhrig*, 64 F.3d at 574.

Under this standard, even when viewed in the light most favorable to the Plaintiffs, the allegations in the Complaint do not rise to the level of "conscience shocking." According to the Plaintiffs, Mr. Gray suffered the fatal seizure during a roughly one-hour period in which the hospital staffer "assigned to monitor and observe Mr. Gray left him unattended and unobserved . . . in order to troubleshoot another ICU patient's electrodes." The Complaint acknowledges that "University Hospital protocols did not require EEG techs to continuously monitor and observe

8

patients" in these circumstances, but that hospital staff had assured the Plaintiffs that "regardless of accepted protocols, [they could] expect that [Mr. Gray] would be watched carefully at all times." The fact that a hospital technician abandoned[4] monitoring of Mr. Gray for approximately one hour to attend to another patient, particularly where hospital protocols did not otherwise compel constant monitoring, can hardly be said to rise to the level of "conscience shocking." At best, the Plaintiffs have alleged facts that might show negligence (and, in light of the fact that constant monitoring was the result of a special promise made to the Plaintiffs, not medical protocol, it may not even amount to negligence), but elevating such careless conduct to the level of a Constitutional deprivation would radically broaden the scope of Constitutional protection, essentially allowing it to replace ordinary tort law.

The 10th Circuit reached precisely this conclusion on a very similar set of operative facts arising in an entirely different context. In *Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1237-38 (10th Cir. 1999), a disabled student reported of being sexually assaulted by another student while using the bathroom. School officials promised the child's parent that the child would thereafter be chaperoned when using the bathroom. Nevertheless, on one occasion when the child was using the bathroom, the chaperone left her post to answer a telephone and the child was again sexually assaulted by the other student. 173 F.3d at 1230-31. The 10th Circuit

---

[4]The Complaint contains no allegations regarding the state of mind of the technician who abandoned his post. It does not, for example, allege that the situation involving the other patient was objectively less severe than the situation involving Mr. Gray, such that the technician's decision to favor the less dangerous situation over the more dangerous one can be said to reflect reckless disregard for Mr. Gray's safety.

9

affirmed the dismissal of the child's §1983 claim against the school officials,[5] finding that the child had not alleged "any intentional or reckless affirmative act designed to harm [him]." *Id.* at 1239. Explaining that the necessarily level of culpability for school officials was recklessness – specifically, "a wanton or obdurate disregard or complete indifference to risk," or a showing that the actor was "aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences" – the court concluded that the allegations of conduct did not rise to that level. *Id.* at 1238-39. Particularly, the court noted that the complaint alleged that the officials did indeed attempt to provide protection to the child, promising (and, to some extent, carrying out that promise) that the child would be chaperoned when using the bathroom. *Id.* at 1239. Under these circumstances, the court found that the child had alleged no more than negligence by the school officials, warranting dismissal of the child's Due Process claim. *Id.*

Thus, to the extent that the "danger creation" doctrine can be said to apply in these circumstances despite *Moore*, the Court nevertheless finds that the Plaintiffs have failed to allege that the Defendants' conduct in exposing Mr. Gray to a risk of harm was "conscience shocking," rather than ordinary tort negligence. For these reasons, the Court finds that the Plaintiffs have failed to allege a cognizable Constitutional violation sufficient to support a § 1983 claim.[6]

### C. Supplemental jurisdiction

---

[5]There, as here, the child had sued a number of officials with supervisory oversight, but not the particular official who abandoned his or her monitoring post. The court's analysis assumed, however, that the school officials could be charged with responsibility for the actions of the chaperone in abandoning her post. *Id.*

[6]The Plaintiffs' separate claim under § 1983 for deprivation of the Constitutional right to "familial association" is clearly a derivative claim that depends upon a showing that the

The Defendants contend that, upon the dismissal of the § 1983 claims that create federal subject-matter jurisdiction, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state-law claims. 28 U.S.C. § 1367(c)(3) contemplates that the Court can exercise its discretion to decline jurisdiction over such claims where it "has dismissed all claims over which it has original jurisdiction." Indeed, when all federal claims have been dismissed "the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

The Plaintiffs concede that they "do not have a compelling reason for the district court to retain jurisdiction over the remaining state-law claims in the event of the court's pretrial dismissal of all the federal-law claims." Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims, and those claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss Federal Claims (**# 17**) is **GRANTED**, and each of the Plaintiffs' claims pursuant to 42 U.S.C. § 1983 are dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court declines to exercise

supplemental jurisdiction over the remaining state-law claims, and those claims are **DISMISSED** without prejudice. The Clerk of the Court shall enter judgment consistent with this Order and close this case.

Dated this 30th day of August, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge